# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

_____

### No. 25-1814

## MICHAEL O'NEIL; JOSEPH PATTON; RICHARD COOK; DANIEL PATTERSON; PETER TREMENTOZZI; DONALD LABRIOLE; RICHARD LAPORT

**Plaintiffs-Appellants**

**v.**

## PETER F. NERONHA, in the official capacity as Attorney General of the State of Rhode Island; STATE OF RHODE ISLAND

**Defendants – Appellees**

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

_____

## REPLY OF PLAINTIFFS-APPELLANTS

_____

Thomas W. Lyons
Strauss, Factor, Laing & Lyons
One State Street, Suite 600
Providence, RI 02908
(401) 456-0700
tlyons@straussfactor.com

Frank R. Saccoccio Esq.
Saccoccio Law Office
928 Atwood Avenue
Johnston, Rhode Island 02919
(401) 944-1600 * 942-8921 Fax
Frank.CSLawOffice@gmail.com

# TABLE OF CONTENTS

Table of Authorities…………………………………………………………..…iii

Argument

    I.     Appellees' Licensing Scheme That Denies Appellants A State Permit For Open Carry Because They Have Municipal Permits For Concealed Carry Violates The Second  Amendment……………………..1

    II.    Appellees' Licensing Scheme Violates The Due Process Clause Of The Fourteenth Amendment Because It Is Vague………………………12

    III.   This Court Should Overturn The District Court's Denial Of Appellants' Motion In Limine………………………………………..15

Conclusion……………………………………………………………………...19

Certificate of Compliance……………………………………………………20

Certificate of Service……………………………………………………………20

# TABLE OF AUTHORITIES

**Supreme Court Decisions**

Cohen v. California, 403 U.S. 15 (1971)…………………………………………8

District of Columbia v. Heller, 554 U.S. 570 (2008)……………………………6, 8

Kolender v. Lawson, 461 U.S. 352, 357 (1983)…………………………………12

McDonald v. City of Chicago, 561 U.S. 742 (2010)………………………………15

New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. 1 (2022)..*passim*

United States v. Rahimi, 602 U.S. 680, 691 (2024)…………………………………9

**Other Federal Decisions**

Baird v. Bonta, No. 24-565, 2026 WL 17404 (9th Cir. Jan. 2, 2026)……..8, 9, 10, 11

Berrios-Romero v. Estado Libre Asociado de Puerto Rico, 641 F.3d 24, 27
(1st Cir. 2011)…………………………………………………………………...18

Equal Employment Opportunity Comm. v. DHL Express (USA), Inc.
No. 10 C 6139, 2018 WL 11631172 at *2 (N.D.Ill. July 19, 2018)………………18

Frey v. City of New York, No. 23-365-cv, 2025 WL 2679729
(2nd Cir. Sept. 19, 2025)…………………………………………………………..10, 11

Hightower v. City of Boston, 693 F.3d 61 (1st Cir. 2012)…………………………11

JIPC Management, Inc. v. Incredible Pizza Co., Inc., No. CV 08-04310,
2009 WL 8591607 at *24 (C.D.Cal. July 14, 2009)………………………………17

New York State Firearms Ass'n v. James, 157 F.4[th] 232, 242 (2nd Cir. 2025)……..11

Parker v. District of Columbia, 478 F.3d 370, 376 (D.C. Cir. 2007),
aff'd sub nom District of Columbia v. Heller, 554 U.S. 570 (2008)………………11

United States v. Mount, 896 F.2d 612, 625 (1st Cir. 1990)…………………………16

Wrenn v. District of Columbia, 864 F.3d 650, 667-68 (D.C.Cir. 2017)...............6

**State Court Decisions**

Aymette v. State, 21 Tenn. 154 (1840)....................................................10

Commonwealth v. Howard, 106 Mass.App.Ct. 282, 2025 WL 3165537 (Mass.App. 2025)....................................................................................7

In re Brickey, 8 Idaho 597, 70 P. 609 (1902)........................................7

McDaniels v. State, No. 1D2023-0533, 2025 WL 2608688 (Fla.App. Sept. 10, 2025)..................................................................5

Mosby v. McAteer, 851 A.2d 1031 (R.I. 2004)....................................13, 14

Nunn v. State, 1 Ga. 243 (1846)....................................................3, 10

State v. Chandler, 5 La.Ann. 489 (1850)..........................................10

State v. Duke, 42 Tex. 455 (Tex. 1875)............................................10

State v. Huntly, 25 N.C. (3 Ired.) 418 (1843)....................................10

State v. Reid, 1 Ala. 612 (1840)....................................................14, 27, 28

**Constitutional Provisions**

Second Amendment.....................................................................*passim*

Fourteenth Amendment.................................................................*passim*

**Statutes**

R.I.Gen.L. § 11-47-8(a)..............................................................11

**Rules**

F.R.E. 703.................................................................................16

F.R.E 802……………………………………………………………………………15

F.R.E. 803(17)……………………………………………………………….....16

F.R.E. 805……………………………………………………………………….15

**Other Materials**

Advisory Committee Note, F.R.E. 803(17)…………………………………..17

Jonathan Meltzer, Open Carry for All: *Heller* and Our Nineteenth-Century
Second Amendment, 123 Yale L.J. 1486, 1505 (2014)…………………………9, 10

Wikipedia, "Anne Hutchinson,"
https://en.wikipedia.org/wiki/Anne_Hutchinson.......................................................4

Wikipedia, "Mary Dyer,"
https://en.wikipedia.org/wiki/Mary_Dyer#:~:text=Fearing%20an%20armed%20ins
urrection%2C%20the%20constables%20were,disarm%20those%20who%20signed
%20the%20Wheelwright%20petition.......................................................................4

# ARGUMENT

I. APPELLEES' LICENSING SCHEME THAT DENIES APPELLANTS A STATE PERMIT FOR OPEN CARRY BECAUSE THEY HAVE MUNICIPAL PERMITS FOR CONCEALED CARRY VIOLATES THE SECOND AMENDMENT.

The Rhode Island Attorney General and the State of Rhode Island support their Second Amendment position with arguments that have already been rejected by the United States Supreme Court, other federal courts, and state supreme courts. Moreover, their arguments have no support in the historical record.

Appellees begin by omitting critical language in a quote from New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022). They say that Bruen held "'States could lawfully eliminate one kind of public carry' so long as another kind of public carry remained available." (Appellees' Brief at 14). However, what the Supreme Court said was: "States could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly." Bruen, 597 U.S. at 59. The omitted language makes clear that the Court considered open carry constitutionally protected. This point is precisely where the District Court erred.

Appellees mistakenly argue that the record before the Court demonstrates a long history of "state and local authorities restricting the manner of public carry, including prohibitions on open carry, dating back to before the Founding." (Appellees' Brief at 19, citing Pls. App. 72-73, 142-43). Those pages are part of Appellees' expert declarations. However, nothing on those pages supports the

argument that the Founders placed any restrictions on open carry of firearms. To the contrary, those pages cite to the Statute of Northampton and derivative state laws which the Supreme Court has expressly rejected as analogous authority. <u>Bruen</u>, 557 U.S. at 41. ("The Statute's prohibition on going or riding 'armed' obviously did not contemplate handguns, given they did not appear in Europe until about the mid-1500s. [citation omitted]. Rather, it appears to have been centrally concerned with the wearing of armor. [citations omitted]. If it did apply beyond armor, it applied to such weapons as the 'launcegay,' a 10- to 12-footlong lightweight lance.").

Moreover, one of Appellants' experts, Brennan Rivas, acknowledged during her deposition that in Georgia open carry was statutorily less restricted than concealed carry as it was thought that open carry was less dangerous than concealed carry because other people could see who had a weapon and avoid them. (App.455-56). Rivas thinks that open carry was not seen as a "social problem." (App.455). Appellees' other expert, Robert Spitzer, says he was not asked to opine on whether Rhode Island's open carry regulatory scheme was consistent with historical regulations, and he did not have an opinion on that issue. (App.473-74).

Appellees also argue that there is long record of "limiting public carry through the Colonial Era and into the Early Republic." (Appellees' Brief at 19, citing Pls. App. pp. 88-89, 123-34). The first group of pages cited are from Rivas' expert declaration. She discusses the Statute of Northampton and colonial statutes imitating

it. As noted, the Supreme Court has discounted that Statute and its colonial analogues as precedent for restricting public carry. Id. Moreover, none of them were specifically directed against open carry.

The second group of pages are from Spitzer's expert declaration. The first two pages discuss "restrictions on concealed carry." The rest of the pages purport to discuss "open carry weapon restrictions," but there are problems with that description. First, the declaration claims to show that "at least 38 states enacted at least 72 laws restricting or extending to the opening carrying of weapons (see Exhibits B and C)." However, Exhibit B, which is a summary of Exhibit C, lists only a few statutes that purportedly restricted open carry during the relevant time period from 1791—the ratification of the Bill of Rights—to 1868—the ratification of the Fourteenth Amendment. Spitzer's descriptions of those statutes in Exhibit C show they did not establish a historical tradition of restricting open carry. For example:

- The 1837 Georgia statute he identifies (Pls. App. 193-94) is the one the Georgia Supreme Court overturned as unconstitutional to the extent it barred open carry. Nunn v. State, 1 Ga. 243, 251 (1846).

- The 1801 Kentucky statute (Pls. App. 193-94) prohibited people from appearing before a judge in court with arms of any kind.

- The 1867 and 1868 Kansas statutes (Pls. App. 209) restricted the public carry of any deadly weapons while intoxicated.

- The 1637 Massachusetts statute (Pls. App. 357) was directed at specifically identified people who had purportedly "been seduced and led into dangerous errors" by "the opinions and revelations of Mr. Wheelwright and Mrs. Hutchison…" In other words, it was not a general bar on open carry; it was an attempt to disarm those whose religious views the Puritan leaders regarded as dangerous.[1]

- The 1840 Maine statute (Pls. App. 353) was directed against any person who "shall make an affray or threaten to kill or beat another…" The <u>Bruen</u> Court recognized that these "affray" statutes were not restrictions on a right of public carry 597 U.S. at 50-51, never mind a restriction on open carry. ("As during the colonial and founding periods, the common-law offenses of "affray" or going armed "to the terror of the people" continued to impose some limits on firearm carry in the antebellum period. But as with the earlier periods, there is no evidence indicating that these common-law limitations impaired the right of the general population to peaceable public carry.").

- The 1851 Minnesota statue (Pls. App. 364) was a surety statute. The <u>Bruen</u> Court said: "the surety statutes *presumed* that individuals had a right to public

[1] https://en.wikipedia.org/wiki/Anne_Hutchinson;
https://en.wikipedia.org/wiki/Mary_Dyer#:~:text=Fearing%20an%20armed%20insurrection%2C%20the%20constables%20were,disarm%20those%20who%20signed%20the%20Wheelwright%20petition.

carry that could be burdened only if another could make out a specific showing of 'reasonable cause to fear an injury, or breach of the peace.'" (emphasis original). Id. at 56.

- It is unclear which 1868 Florida statute Spitzer is identifying. (Pls. App. 191). Assuming it is the second one, it seems remarkable that none of the opinions in Bruen refer to it.[2] Regardless, a Florida Court of Appeals has recently held that a 2023 statute banning open carry is unconstitutional. McDaniels v. State, 419 So.3d 1180, 1194 (Fla.App. 2025) ("The Constitution protects the right to carry arms openly for self-defense. Florida's Open Carry Ban cannot be reconciled with that guarantee.").

- The 1852 Hawaii statute was promulgated when Hawaii was a separate kingdom from the United States. If the Supreme Court thinks territorial statutes are not precedential, Bruen, 597 U.S. at 67, then surely statutes passed in other countries have even less significance.

- The 1858 District of Columbia statute (Pls. App. 182), reads in Spitzer's exhibit: "It shall not be unlawful for any person to carry or have concealed about their person any deadly or dangerous weapons…" Even assuming this

---

[2] Spitzer testified at his deposition that he obtained some of the material for Exhibit C from the Duke Repository of Firearms Laws. Appellants moved in limine to exclude information from the Repository as hearsay and unreliable. See, Part III of Appellants' Brief and Reply.

is a typo, it was a ban on any kind of public carry. In 2017, the D.C. Circuit enjoined a D.C. statute that required "good reason" to obtain a CCW permit. Wrenn v. District of Columbia, 864 F.3d 650, 667-68 (D.C.Cir. 2017). Importantly, the court's opinion made no distinction between concealed carry and open carry: "Reading the Amendment, applying Heller I's reasoning, and crediting key early sources, we conclude: the individual right to carry common firearms beyond the home for self-defense—even in densely populated areas, even for those lacking special self-defense needs—falls within the core of Second Amendment protections." Id. at 662.

Regardless, one statute in one jurisdiction most certainly does not establish a historical tradition. Bruen, 597 U.S. at 65-66, quoting Heller, 554 U.S. at 632 (2008). ("[W]hile we recognize the support that postbellum Texas provides for respondents' view, we will not give disproportionate weight to a single state statute and a pair of state-court decisions. As in Heller, we will not "stake our interpretation of the Second Amendment upon a single law, in effect in a single [State], that contradicts the overwhelming weight of other evidence regarding the right to keep and bear arms for defense" in public.").

- The other statutes Appellees identify do not support a historical tradition of restricting open carry of firearms. (Appellees' Brief, at 20). The 1642 statute in the colony of New Netherland prohibited persons from "drawing a knife

much less to wound any person, under…penalty." (Pls. App. at 135). The 1686 New Jersey barred people from wearing "swords, &c," however the Bruen Court commented the statute was short-lived and limited to "planters." 597 U.S. at 47-48. The other statutes Appellees identify on that page of their brief were all modeled after the Statute of Northampton which, as noted previously, the Bruen court has rejected as relevant to the right of public carry. Id. at 41. The "brandishing" statutes on which Appellees attempt to rely (Appellees' Brief at 21) are similarly distinguishable because brandishing a firearm, except in self-defense, is a criminal offense and no court has held it is protected under the Second Amendment. See, e.g., Commonwealth v. Howard, 106 Mass.App.Ct. 282, 2025 WL 3165537 (Mass.App. 2025).

On page 27 of their brief, Appellees argue three statutes that postdate the ratification of the Fourteenth Amendment in 1868. Thus, all three are outside the period the Supreme Court has said is relevant for determining the historical tradition. Bruen, 547 U.S. at 34-38 ("[T]he public understanding of the right to keep and bear arms in both 1791 and 1868 was, for all relevant purposes, the same with respect to public carry."). Further, the Idaho statute (App.334) is one of the territorial laws the Court has also said are not persuasive. Id. at 67. Regardless, the Idaho Supreme Court declared it unconstitutional. In re Brickey, 8 Ida. 597, 70 Pac. 609 (1902).

Appellees also argue in their brief that open carry now has a "social stigma" and that this justifies their licensing scheme. However, the Supreme Court has made clear that the right of public carry depends on a historical tradition, not contemporary policy preferences. Heller, 554 U.S. at 636 ("[T]he enshrinement of constitutional rights necessarily takes certain policy choices off the table."). Regardless, Appellees' argument is akin to saying that certain language is offensive to many people; therefor, the government can restrict it despite the First Amendment. The Supreme Court has made clear this is not the case. See, e.g., Cohen v. California, 403 U.S. 15, 26 (1971) (holding Cohen could not be convicted of disturbing the peace because he walked through a courthouse wearing a t-shirt that said "Fuck the Draft").

The Ninth Circuit recently refuted the same arguments the Appellees make here. Baird v. Bonta, No. 24-565, 2026 WL 17404 (9th Cir. Jan. 2, 2026). It addressed California's handgun licensing scheme that barred open carry in any counties that had populations of more than 200,000, which counties constitute 95 percent of the State's population. The court began by summarizing the historical record: "For most of American history, open carry has been the default manner of carry for firearms. It remains the norm across the country—more than thirty states generally allow open carry to this day, including states with significant urban populations." Id. at *2. The Ninth Circuit reviewed the appropriate Second

Amendment analysis under recent Supreme Court decisions, i.e., if the Constitution presumptively protects an individual's conduct that is proscribed by a firearm regulation, then "the government must affirmatively prove that [the challenged] regulation is part of the historical tradition the delimits the outer bounds of the right to keep and bear arms." Id. at *6, quoting Bruen, 597 U.S. at 19, 24; United States v. Rahimi, 602 U.S. 680, 691 (2024). "The absence of 'a distinctly similar historical regulation addressing [the] problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." Id., quoting Bruen, 587 U.S. at 26.

The Ninth Circuit then returned to the historical record:

[T]his case stands out in that it unquestionably involves a historical practice—open carry—that predates ratification of the Bill of Rights in 1791…The historical record makes unmistakably plain that open carry is part of this Nation's history and tradition. It was clearly protected at the time of the Founding and at the time of the adoption of the Fourteenth Amendment.

Id. at *7. "In 1789, despite there being 'a series of laws that regulated the discharge, storage, and aggressive use of firearms,' 'there were *no* direct statutory bans on the carry of arms.'" (emphasis original in decision). Id., quoting Jonathan Meltzer, Open Carry for All: *Heller* and Our Nineteenth-Century Second Amendment, 123 Yale L.J. 1486, 1505 (2014) (hereinafter "Meltzer").

The court then reviewed state statutes and supreme court decisions, which it summarized:

The historical record from the time of the Fourteenth Amendment's adoption is, if anything, even more solicitous of the right to openly carry firearms for self-defense. What is also striking about this time is the clear difference in attitude towards bans on concealed carry, which were sometimes tolerated, and bans on open carry, where were not. The general consensus at the time was that open carry was essential to protect the natural and common law right of self-defense, while "those who relied on concealed weapons must have an improper, aggressive motive." Indeed, between 1822 and 1850, no fewer than six state high courts considered the scope of the right to carry firearms for self-defense and explicitly found constitutional significance in the distinction between open and concealed carry.

Id. at *8-9, citing, Meltzer, at 1511-12, and State v. Reid, 1 Ala. 612 (1840); Aymette v. State, 21 Tenn. (2 Hum.) 154 (1840); Nunn v. State, 1 Ga. 243 (1846); State v. Chandler, 5 La. Ann. 489 (1850); State v. Huntly, 25 N.C. (3 Ired.) 418, 422-23 (1843); State v. Duke, 42 Tex. 455, 458-59 (Tex. 1875).

The Ninth Circuit rejected California's argument, as well as the position of the Second Circuit, that Bruen "treated open carry and concealed carry as fungible." Id. at *10, citing Frey v. City of New York, No. 23-365-cv, 2025 WL 2679729 at *12 (2nd Cir. Sept. 19, 2025). The court said it was telling that the Second Circuit, like Appellees, had to modify the Supreme Court's language to support its holding, noting that the Court actually said: "States could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly." Id., quoting Bruen, 597 U.S. at 59.

The Ninth Circuit also rejected California's argument, like Appellees', that its restrictions on open carry are permissible attempts to address contemporary societal

concerns because open carry could create "a highly stressful and unsafe environment" that "has the high potential to create panic and chaos." Id. The court said: "[T]he fact that 'earlier generations addressed the societal problem, but did so through materially different means," is probative evidence "that a modern regulation is unconstitutional." Id., quoting Bruen, 597 U.S. at 26.

An additional point, Appellees insinuate without using the word that Appellants lack standing because they have not said strongly enough, in Appellees' opinion, that they will engage in open carry if they get their RIAG permits. (Brief, at 11). Appellees are wrong, legally and factually. See, Hightower v. City of Boston, 693 F.3d 61, 70 (1st Cir. 2012), citing Parker v. District of Columbia, 478 F.3d 370, 376 (D.C. Cir. 2007), aff'd sub nom District of Columbia v. Heller, 554 U.S. 570 (2008); see also, New York State Firearms Ass'n v. James, 157 F.4th 232, 242 (2nd Cir. 2025); Frey v. City of New York, 157 F.4th at 131, n.4. In Hightower, this court said: "[I]t is clear that the revocation of Hightower's [firearms] license constitutes an injury that suffices to satisfy the minimum requirements of Article III standing, regardless of whether Hightower can apply for another license." 693 F.3d at 70. Moreover, engaging in open carry of a handgun without an RIAG permit could subject Appellants to a felony prosecution. R.I.Gen.L. § 11-47-8(a). In short, these decisions hold that the denial of the application to obtain or renew the permit is

sufficient to provide standing, particularly if the plaintiff may be exposed to prosecution otherwise.

Factually, all Appellants asserted in their Declarations that they wanted the option to engage in open carry for a variety of reasons, including protection while operating a firearms business, possible employment, deterrence of crime, or simply because they think it is their constitutional right. (Pls.App. 43, 45, 47, 49, 51, 53, 55). This is more than sufficient for standing. Accordingly, the District Court erred when it held Appellees did not have a right under the Second Amendment to the RIAG permit that would allow them to engage in open carry.

## II. APPELLEES' LICENSING SCHEME VIOLATES THE DUE PROCESS CLUASE OF THE FOURTEENTH AMENDMENT BECAUSE IT IS VAGUE.

Appellees' arguments confirm that their permitting scheme violates the Fourteenth Amendment because the scheme is unconstitutionally vague. Due process requires that a law be written "(1) with sufficient definiteness that ordinary people can understand what is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983). Appellees do not attempt to explain how their written permit scheme has sufficient definiteness and how it avoids arbitrary and discriminatory enforcement. Instead, Appellees' repeated justification is that they have provided factors for determining whether an applicant has a "need" for a permit and that they told

Appellees when their renewal applications were denied the reason for the denial. (Appellees' Brief at 48-49). However, their written factors do <u>not</u> include whether the applicant already has a municipal CCW permit, which was the grounds on which Appellees denied all the Appellants' applications to renew their RIAG permit. (App. 43, 45, 47, 49, 51, 52-53, 54-55). Rather, Appellees point to a sentence following the listed factors which says there is no: "set formula or criteria to limit or restrict [the RIAG's] decision to issue or deny a pistol permit." That is not a standard at all; that is unbridled discretion.

The perfect example of that unbridled discretion is Appellant Cook's situation. He originally received his RIAG permit in 2009, and it was renewed in 2013 and 2017 when the prior Attorney General was in office. (App.54). Cook obtained a municipal CCW permit in 2013. His RIAG permit was renewed in 2017 by the prior Attorney General <u>when</u> he had a municipal permit, but it was denied in 2021 <u>because</u> he had a municipal permit. Nothing had changed except the individual who was Attorney General and his unwritten, subjective standard of "need." It would be impossible for an attorney to anticipate that change, never mind an ordinary person. Moreover, judicial review of this decision is available only through a petition for writ of certiorari to the Rhode Island Supreme Court.

Appellees justify this discretion by arguing that Appellants have no protected liberty or property interest in their RIAG permits, citing <u>Mosby v. McAteer</u>, 851

A.2d 1031, 1048 (R.I. 2004). There are two problems with this. First, <u>Mosby</u> recognized that under Rhode Island law there was an individual right to keep and bear arms for self-defense, but the court said it did not need to decide the scope of that right. <u>Id.</u> at 1043. It did not decide the issue under the Second Amendment because plaintiff did not assert a federal claim. <u>Id.</u> at 1039. The court commented that the phrase "bear arms" in the Rhode Island Constitution was limited to a "military context," an interpretation the Supreme Court rejected with respect to the Second Amendment in <u>Heller</u>, 554 U.S. at 592. ("Putting all these textual elements together, we find they guarantee the individual right to possess and carry weapons in case of confrontation."). Second, the <u>Mosby</u> court said: "As a matter of policy, this Court will not countenance any system of permitting under the Firearms Act that would be committed to the unfettered discretion of an executive agency." <u>Id.</u> at 1050. Accordingly, it recognized that at least some form of due process would apply. <u>Id.</u> at 1051. However, Appellees now claim that unfettered description that the <u>Mosby</u> court said would not be permitted.

Regardless, the Second Amendment determines whether Appellees have a liberty interest. The Supreme Court has said the Second Amendment provides a private right to public carry of a firearm for self-defense. Appellants seek a permit to engage in public carry, both open and concealed. Appellees issue the only Rhode Island permits to engage in both open and concealed public carry. Appellants have

a right to obtain those permits, assuming no other constitutional restriction applies, and, on this record, none do. The Fourteenth Amendment determines what process is due under the Second Amendment. See, <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 791 (2010) (holding that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment). Under the Fourteenth Amendment, Appellees' permitting scheme is void for vagueness.

## III. THIS COURT SHOULD OVERTURN THE DISTRICT COURT'S DENIAL OF APPELLANTS' MOTION IN LIMINE AS MOOT.

Appellees' asserted objections to Appellants' motion in limine are meritless. Appellants note that the District Court simply decided that its interpretation of <u>Bruen</u> rendered the motion moot. It never addressed its merits. First, the Duke Repository of Firearms Laws and HeinOnline are clearly hearsay because they are republications of what are purportedly historical statutes. F.R.E. 802. Moreover, no hearsay exception applies to them.

Second, Spitzer's compilation of historical firearms laws based on other compilations such as the Duke Repository or HeinOnline is hearsay based on hearsay for which there is no applicable exception. F.R.E. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). There is no hearsay exception for Spitzer's compilation, nor do Appellees argue that there is one.

Appellees' attempt to argue that Spitzer's expert reliance on the Repository makes it admissible. However, Rule 703 expressly states that the expert's reliance does not make the underlying material admissible unless the proponent of the evidence establishes that its probative value "substantially outweighs" its prejudicial effect. F.R.E. 703. Appellees make no such showing. To the contrary, Appellants' expert, Clayton Cramer, raised significant questions about the reliability of Spitzer's compilation in his declaration supporting Appellants' Motion in Limine. (App.494-526).

Appellees mistakenly assert that the Duke Repository itself is admissible under Rule 803(17) for: "Market quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations," citing United States v. Mount, 896 F.2d 612, 625 (1st Cir. 1990). Appellees' reliance on Judge Selya's opinion in that case is bootless. That case involved the admissibility of a two-volume set of books, "The Collected Works of Abraham Lincoln," published in 1953. The owner of the set was a dealer in antiquities who said she and other dealers like herself relied on the set to determine where original Lincoln documents were located. Moreover, the set had a many decades-long history of reliability. By contrast, no one other than Spitzer has said he or she relies on the Duke Repository without checking other sources of information.

The reason that exception applies to certain "compilations" is that people, like the antiquities dealer in Mount, rely upon them in their professions or daily lives and those compilations have in the course of time proven reliable. The Advisory Committee Notes state:

> Ample authority at common law supported the admission in evidence of items falling in this category. While Wigmore's text is narrowly oriented to lists, etc., prepared for the use of a trade or profession, 6 Wigmore §1702, authorities are cited which include other kinds of publications, for example, newspaper market reports, telephone directories, and city directories. Id. §§1702–1706. The basis of trustworthiness is general reliance by the public or by a particular segment of it, and the motivation of the compiler to foster reliance by being accurate.

Advisory Committee Note, F.R.E. 803(17). Here, we have one person relying on the Repository for his forensic work.

Appellees submit that the Duke Repository is not simply a "compilation of objective facts not requiring for their statement, a subjective analysis of other facts." See, JIPC Management, Inc. v. Incredible Pizza Co., Inc., No. CV 08-04310, 2009 WL 8591607 at *24 (C.D.Cal. July 14, 2009) (commenting that reports prepared for a "narrow segment of interested parties" and containing "conclusions reached after analysis" did not qualify as compilations under Rule 803(17)). Rivas testified that the entries in the Repository have been edited or redacted by unknown persons, for unknown reasons, and that they do not reflect whether the statutes included were subsequently modified by a legislature or ruled unconstitutional by a court.

(App.440-41). Obviously, there have been subjective revisions made to the historical laws and critical facts have not been included.

There is no history of reliability for the Duke Repository as there was for "The Collected Works of Abraham Lincoln," nor have Appellees presented a foundation for the application of this exception other than Spitzer saying he relies on it. See, Equal Employment Opportunity Comm. v. DHL Express (USA), Inc. No. 10 C 6139, 2018 WL 11631172 at *2 (N.D.Ill. July 19, 2018) (excluding exhibits because no foundation was provided for their admissibility under Rule 803(17)). Notably, the Repository itself states: "Conscientious users of this repository should supplement their results with further legal research." Rivas testified that while she uses the Repository, she always locates the law itself. (App.440).

Appellees' reliance on Berrios-Romero v. Estado Libre Asociado de Puerto Rico, 641 F.3d 24, 27 (1st Cir. 2011), is misplaced. In that case, the issue was whether the Court could take judicial notice of a recently published decision by the Puerto Rico Court of Appeals. The existence and accuracy of the decision was not otherwise in doubt. The Court said it could take judicial notice. Here, however, Appellees are asking that the Court take judicial notice of what are purportedly historical statutes dating back hundreds of years, edited and published by a private organization, without any foundation provided by the private organization respecting the reliability of its methods. Appellants' expert Cramer raised significant issues

respecting the reliability of the material Spitzer has used from the Duke Repository and HeinOnline in his declaration. (see, e.g., App. 507, 508, 510, 514, 523, 525).

Finally, Appellants submit that the issue of the Duke Repository's admissibility under this—or any other exception—has never previously been contested in court and therefore never genuinely established. For all these reasons, the Court should hold that Spitzer's testimony may be excluded because it relies on inadmissible, unreliable hearsay, i.e., his own compilations of laws, based on the Duke Repository and HeinOnline, which are also inadmissible hearsay.

## CONCLUSION

This Court should reverse the district court's order and judgment granting summary judgment for Appellees and denying the Appellants' motion for summary judgment. Alternatively, the Court should reverse the district court's grant of summary judgment for Appellees and remand the case for further proceedings.

**APPELLANTS,**
By their attorneys,

/s/ Thomas W. Lyons
Thomas W. Lyons
Strauss, Factor, Laing & Lyons
One State Street, Suite 600
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

/s/ Frank R. Saccoccio
Frank R. Saccoccio Esq.
Saccoccio Law Office
928 Atwood Avenue
Johnston, Rhode Island 02919
(401) 944-1600 * 942-8921 Fax
Frank.CSLawOffice@gmail.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the requirements of Rule 32(g)(1) because, excluding the parts of the brief exempted by Fed.R.App. P. 32(f), this reply contains 4512 words.

2. This reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: this brief has been prepared in a proportionally spaced typeface using Times New Roman in 14-point font.

*/s/ Thomas W. Lyons*

Attorney Plaintiffs-Appellants
Dated: January 23, 2026

## CERTIFICATE OF SERVICE

On January 23, 2026, I caused the within motion to be filed electronically and it is available for viewing and downloading from the ECF system.

*Thomas W. Lyons*

.